LAWRENCE T. PAYNE, Complainant-Appellant, v.
LOUIS GAUCHAT et al., Defendants-Appellees.
—457 S.W.2d 853.

Middle Section. March 26, 1970.

Certiorari Denied by Supreme Court June 15, 1970.

James C. Cunningham, Cunningham & Mitchell, Clarksville, for complainant-appellant.

Marks & Fleming, Clarksville, for defendants-appellees.

## I—THE CASE

SHRIVER, P.J. (M.S.). The parties will be referred to as "complainant" and "defendants", as they appeared in the Court below.

This is an action for a declaratory judgment filed by Lawrence T. Payne in the Chancery Court of Montgomery County against Louis Gauchat and James Crockarell, as representatives of the Clarksville Loose Floor Association, an unincorporated association composed of all of the loose floor operators, or loose leaf warehousemen of Clarksville, Tennessee. The bill seeks a declaration of the rights of the parties and particularly as to the right of the complainant, as the operator of a tobacco warehouse in the Clarksville Tobacco Market, to sell and transfer his poundage allotment to Banner Warehouse, Inc., another tobacco warehouse in Clarksville, after complainant's warehouse was destroyed by fire.

The cause was heard by Chancellor W. M. Leech on the pleadings, proof by depositions and argument of counsel and resulted in an opinion and decree in which he held that this is a proper case for a declaratory judgment, but that complainant's proposed sale of his allotment was not in keeping with the rules and regulations of the Association and that the action of the Association in refusing to allow the sale of his allotment to another floor was valid and should be upheld.

From the foregoing holding of the Chancellor, the complainant prayed and perfected an appeal to this Court and has filed assignments of error. -

## II—THE FACTS

There is very little dispute about the essential facts involved in this litigation. The complainant, for several years, had been engaged in the business of operating a tobacco warehouse in Clarksville, Tennessee, generally known as a loose-leaf floor, where the auction sale of tobacco was conducted.

In October, 1965, complainant's tobacco warehouse was destroyed by fire. At that time his warehouse had an allotment for the sale of dark-fired tobacco of 59,162 pounds per selling day. This allotment was made by the defendant Association along with allotments to each of the other tobacco warehouses in Clarksville, and was based generally on the sales previously made by such loose floors. It is complainant's insistence that said allotment is a property right owned by him as a result of experience and his sales built up over a number of years, and that he has a right to sell said allotment to another loose-leaf floor.

After the destruction of his warehouse by fire, complainant agreed to sell said daily allotment to Banner Warehouse, Inc., and said agreement is made exhibit to the original bill.

By this agreement executed on November 10, 1965, it is recited that Lawrence T. Payne, as first party, agrees to sell, and second party agrees to purchase all of the dark-fired tobacco warehouse daily sales allotment of the first party, consisting of 59,162 pounds per selling day, for which the second party agrees to pay $20,000.00 in four annual installments of $5,000.00 each, with interest from April 1, 1966 at the rate of 4% per annum.

There are other provisions including one to the effect that the first party would work for the second party during the 1965-66 tobacco season without salary, and that for the succeeding three seasons he would work for the second party for a salary of $2,500.00 per season, and further that the first party would not in any manner, directly or indirectly, rebuild a tobacco warehouse or engage in the loose floor tobacco warehouse business in competition with the second party in the Clarksville trade area for a period of four years.

It is further provided as follows:

"This agreement to buy and sell is expressly conditioned upon his proposed sale of the said tobacco warehouse daily sales allotment by the Party of the First Part to the Party of the Second Part being approved by the Clarksville Loose Floor Association. This provision making the approval of the Clarksville Loose Floor Association to this proposed sale is made at the insistence of the Party of the Second Part. The Party of the First Part maintains and insists that the daily

sales allotment herein proposed to be sold is a vested property right and is an asset of his tobacco business salable as any other asset of said business. The Party of the Second Part has required the consent of such Association as a consideration of good will and public and personal relationship with its competitors.''

It is then stipulated that it is agreed and understood that nothing in the proposed agreement should be construed as an admission by party of the first part that such approval of the sale of his daily sales allotment is necessary.

Since the Banner Warehouse, Inc., conditioned the aforesaid agreement upon the approval of the sale by the defendant Association, a meeting of the Association was called November 10, 1965 and a Resolution was adopted by a majority vote of the members present, which Resolution is as follows:

## ''A RESOLUTION OF CLARKSVILLE TOBACCO ASSOCIATION

### November 10, 1965

''Be it Resolved that the allotment of Dark Tobacco, allotted pounds or allotted baskets, of the firm of Wilson and Payne or Lawrence Payne by virtue of the rules and regulations of the Dark Tobacco Wahehouse Association cannot be sold or transferred to the Banner Warehouse. Therefore the request of Lawrence Payne be denied.

Be it further resolved that the Clarksville Warehouse Association by majority vote, instruct its supervisor to see that no warehouse sells more than its alloted

pounds or time or baskets, except in the case of one or more warehouses having insufficient amount of pounds to fulfill its allotted time in one day and that deficiency shall be allotted to the remaining warehouses for a one day period only.

| Vote For | Against |
|---|---|
| R. M. Williams | Chas. Dade |
| L. Gauchat | L. Payne |
| Russell Cato | J. T. Biggers'' |
| Jas. Darnell | |
| R. W. Ellis, Jr. | |

In the Brief of counsel for the complainant, it is stated:

"Because the parties to this action considered that the rules and regulations of Defendant Association were controlling as to the outcome of the case, most of the testimony in the case centered around this area. The evidence shows that there were no printed rules and regulations of the Association after 1932, some thirty-three years before this controversy arose, and the Chancellor, in his memorandum opinion, so found. The issue then turned on 'verbal' rules and regulations in the area.''

It is pointed out in the Answer of the defendants, and appears to be substantiated by the proof, that the Clarksville Loose Floor Association grew out of the organization on the part of the loose floor operators in the Clarksville trade area that some kind of organization was necessary in view of the growth of the business which began about the year 1907. Accordingly, on or about June

3, 1935, the loose floor operators of Clarksville joined together in a united effort to serve the buyers and sellers of dark-fired tobacco in accordance with an agreement, the preamble to which is as follows:

"We, the loose floor warehousemen of Clarksville, Tennessee, in order to better serve the tobacco trade, both the buyer and the seller, to promote the loose floor market at this place by a uniform and united effort on our part, to secure the cooperation of both buyer and seller, and relieve the market of all possible friction, do hereby establish the 'ASSOCIATED LOOSE LEAF WAREHOUSEMEN OF CLARKSVILLE' and do hereby bind ourselves to the faithful conformity of its rules and regulations hereinafter set forth."

It also appears that the Clarksville Loose Floor Association cooperates with the Clarksville Tobacco Board of Trade which is an organization of loose floor operators who sell dark fired tobacco to companies that buy on that market, and it appears that as the tobacco market in Clarksville grew, it became necessary to regulate the amount of tobacco sold daily on the Clarksville market so that the Loose Floor Association began to regulate the number of hours per day for the sale of tobacco and it also established the time to start the sales each day and eventually gave an allotment to each loose floor. This allotment appears to have been formulated some three years ago, based on a daily poundage of four hundred fifty thousand (450,000) per day allotted to the Clarksville market, and it is the earnest insistence of the defendants that the allotments made to the various loose floors is to the floor or the warehouse and not to the individual owner as a property right.

## III—ASSIGNMENTS OF ERROR

There are four assignments of error which may be summarized in the words of the attorney for complainant as set forth in his statement of the issues, as follows:

"The nature and purpose of this appeal is to have this Court review de novo the action of the Chancellor under T.C.A. 27-303. The Appellant contends that he has the right to sell and transfer his tobacco allotment which he as a tobacco warehouse operator and a member of the Association had earned over many years under the experience system of allocating allotments on the Clarksville market, as a property right, after his warehouse was destroyed by fire, and that the action of the Association in refusing to allow such sale was arbitrary, unreasonable and illegal and in restraint of fair trade and competition."

The Chancellor wrote a clear and concise Memorandum Opinion finding the facts and applying the law, which Opinion is as follows:

## "MEMO

This is an unusual suit for a declaratory judgment.

The Complainant, Lawrence T. Payne, was in October 1965 engaged in the business of operating a tobacco warehouse, commonly known as a loose floor, for the auction sale of tobacco. He and all other warehouses or loose floors in Clarksville were members of a voluntary association known as the Clarksville Loose Floor Association. About 35 yeaars ago the loose floor owners in the Clarksville market formed the Association for the purpose of having order in conducting tobacco sales, pri-

marily for the convenience of the farmers and at that time there were no regulations on raising and marketing tobacco and no allotments or other governmental controls, consequently there is nothing in the By Laws of the Association relative to allotments, poundage or otherwise. On this question, Mr. J. Fred Smith, Secretary-Treasurer of the Association, testified as follows:

Q. Now does the Clarksville Loose Floor Association have a set of rules and by-laws?

A. We haven't had any by-laws printed since 1932 I think but we have rules that we do enforce.

Q. Who adopts those rules?

A. They are passed at a meeting of the Loose Floor Association.

Q. And as I understand it, the Loose Floor Association is composed of all the loose floor operators in the city, is that right?

A. Yes, sir, that is right.

Q. According to the rules how many votes does each warehouse have?

A. One vote.

In October of 1965 the Complainant's warehouse was destroyed by fire and for another year he operated his business in another warehouse under a rule of the Association adopted in April 1958 which permitted a floor that was destroyed by fire to operate at some other place, that rule reading as follows:

'Louis Gauchat, seconded by Russell Cato, makes a motion that in case any floor is destroyed by fire and

operator continues in business in some other location, he will retain his allotment remainder of season and retain the same allotment the following season, regardless of whether his poundage justifies the same.' All members, including the Complainant voted for this rule.

It appears that the poundage each year is allotted based upon the poundage handled the previous year and in the event a floor went out of business that floor's poundage was then allotted to the remaining floors and if a new floor is formed, a minimum poundage is allotted the new floor and deducted from the others on a pro rata basis. There is nothing in the rules of the Association that provides for the closing of a floor and transferring the allotted poundage of that floor to an existing floor.

After the Complainant had continued in business as permitted by the rule applying to a floor destroyed by fire, the complainant entered into a contract with the Banner Warehouse, an existing loose floor, to sell his poundage to said Banner Warehouse and to work for that floor. The contract specifically provided that Association approval of the transfer would first have to be obtained. When the question was presented to the membership by a vote of five (5) to three (3), approval was denied. In connection with this question, Mr. Smith testified as follows:

Q. Now Mr. Smith state whether or not you were present when they had this meeting of the Association when Mr. Payne sought the permission of the Association to sell this quota or allotment to the Banner Warehouse?

A. Yes, I was present.

Q. What warehouses were represented at the meeting if you recall?

A. I have got it right there in the book. All firms were presented, that was October 29, 1965.

Q. All firms?

A. All firms were represented.

MR. CUNNINGHAM—What date was that?

A. October 29, 1965.

Q. Now what action did the Association take?

A. That 'Lawrence Payne states that he wants to sell his poundage allotment to the Banner Warehouse. He also said that he did not expect to re-build or go back in business. Discussion by all present. Meeting adjourned with nothing done in regard to L. Payne.'

Q. Now did you have a subsequent meeting?

A. We had a meeting on November 10th, 1965.

Q. All right sir, and what happen there?

A. It states at that meeting that we had passed a resolution and it says 'That a motion that a vote on the attached resolution be taken' so it was voted on and the vote was five to three in favor of the resolution.

Q. All right now what was the resolution?

A. 'Be it resolved that the allotment of dark tobacco, allotted pounds or allotted baskets of the firm of Wilson & Payne or Lawrence Payne by virtue of the rules and regulations of the dark tobacco warehouse Association cannot be sold or transferred to the Ban-

ner Warehouse. Therefore the request of Lawrence Payne be denied.'

It appears to the Court from all of the testimony and exhibits that this Association has changed rules from time to time to meet the needs of the various loose floors and to have an orderly and equitable manner in which tobacco is sold and that as governmental rules, regulations and controls require. All changes in policy have been by majority vote of the membership. This simply means that the membership from time to time adopted new rules to meet each new situation as it arose.

From the manner in which the Association has operated since its organization, first as to time of selling, then baskets, and now poundage, the rules applied to the floor and not to individuals. It is the Court's opinion that the very purpose for which the Association was formed would be defeated if one floor were to be allowed to transfer its poundage to another existing floor and it is clear that this was not anticipated. The adoption of the rule in case of a fire was no doubt in order that sufficient time could be granted the floor that was destroyed by fire to rebuild or to acquire a new floor. If the membership as a whole had anticipated a member wanting to retain and sell his poundage in the event of a fire, such a provision no doubt would have been incorporated in that rule in 1958. If a member is allowed to sell his allotment to an existing floor, it would be possible for one existing floor to buy all the other floor's allotments and thus corner the whole market.

If the by-laws, rules and regulations specifically allowed or prohibited the sale of an allotment the Court would be bound thereby, and in the absence of such

written specific rule, the custom and manner in which the membership had handled the allotments is equally binding on the Court. It is clear from the record and all of the surrounding circumstances that the membership considered the allotment to belong to the floor and not the owner of the floor. The Court is therefore of the opinion that the action of the Association in refusing to allow the sale of the allotment by Complainant to the Banner Loose Floor was in keeping with the rules and regulations of the Association.

A decree in accord with this memorandum will be prepared and entered on the minutes of the Court and this memorandum will be filed as a part of the technical record but need not be copied on the minutes.

This the 5th day of July, 1968.

/s/ W. M. Leech
Chancellor''

## IV—OUR CONCLUSIONS

The contract of sale between complainant and Banner Warehouse, Inc., contains a condition that it be approved by the Loose Floor Association. In said contract, and in this lawsuit, complainant insisted that such approval by the Association was unnecessary, but he, nevertheless, allowed such approval to be a condition of his contract. His right to approval rests upon his agreements with the Association and its members, which are embodied in the rules and regulations of the Association.

Perhaps the most important and persuasive testimony in this case bearing upon the rules and regulations of the Association is that of Mr. J. Fred Smith, Secretary and

Treasurer of said Association, which position he had held for about thirty-five years. From his testimony it would appear that the Clarksville, Springfield and Hopkinsville Markets for dark-fired tobacco have a three market meeting every Fall and decide on the opening date for the sale of tobacco, the setting of the poundage with which each Market will start off the selling season, the allotment for the Clarksville, Springfield and Hopkinsville Markets being set at four hundred fifty thousand (450,000) pounds each per day.

It also appears that the Loose Floor Association is composed of all of the loose floor operators in the City of Clarksville and that each warehouse has one vote at the meetings of the Association.

As has been pointed out by the Chancellor hereinabove, Mr. Smith was asked and answered as follows:

"Q. By custom or usage has any loose floor operator even been allowed by the Association to sell another loose floor operator his allotment which he could sell?

A. I never heard of a loose floor man asking or wanting to sell his allotment to another loose floor until this matter came up."

At another point Mr. Smith testified that he had never known the question such as that raised by the complainant herein to be brought up before. In other words, "It has never been brought up about selling it before, this is the first time that it has ever happened."

Counsel for complainant cite several instances that they claim are precedents for the action sought to be taken by the complainant in this case. Counsel for the

defendants reply by pointing out the distinctions to be made in each of the instances cited by complainant and conclude with the statement:

"All of the sales and transfers referred to by Complainants adhered to the rules and regulations of the Clarksville Floor Association that the sales allotment stayed with the warehouse and was not a property right which belonged to the individual warehousemen, and subject to sale at will."

It appears evident that the Chancellor agreed with the foregoing conclusion. We have examined the record carefully and are forced to the conclusion that the evidence does not preponderate against the holding of the Chancellor on these questions of fact. This being true, we are under the duty of affirming the Chancellor's finding of fact and it is our conclusion that, under those facts, the Chancellor's application of the law is correct. It results that the assignments of error are overruled and the judgment of the Chancellor is affirmed.

Puryear and Todd, JJ., concur.